Opinion by
Beaver, J.,
This is an action by landlords against the sureties of their *449 tenant who removed from the premises before the expiration of the lease.
The court below, as we think, correctly stated that “When, for a breach of the terms of the lease by the lessors, the principal has left the leased premises, the sureties have a right to defend for the rent accruing after the tenant’s removal.” If, therefore, the affidavits of defense set forth, with sufficient clearness, what would have been a defense by the tenant, the principal in the lease, it will avail to prevent judgment against the sureties.
It seems to be conceded by the affidavit of defense that-the tenant vacated and abandoned the premises during the leased period.
The following clause appears in the lease under which the claim of the plaintiffs is made in this case:
“The said parties of the first part agree to maintain the hotel and other buildings on the premises in a state of repair consistent with the needs and demands of a good hotel, it being understood by and between the parties hereto that the said Edward B. Horner is to keep and maintain in repair the beer pumps, spigots and accompanying apparatus and the furnace grates, and that he, the said Edward B. Horner, is to replace any window lights broken during his tenancy and is likewise to repair all injury to the building or fixtures done or caused by the willful neglect or wanton and malicious acts of any of his guests or employees.”
The affidavit of defense alleges that “The building was heated by a steam plant which it was the duty of the plaintiffs, under their agreement, to maintain. They failed, neglected and refused to do so, and said plaintiffs were warned to do it and failed to repair or replace it. The result was that it would not heat the building. The rooms were cold, uncomfortable, dangerous and prejudicial to health and guests refused to occupy them. The entire third floor of the building, which had eleven rooms, was so cold that it could not be occupied by guests, boarders would not stay and transient guests would not patronize the hotel. The boiler was too small and inadequate and not of sufficient size to furnish heat.”
*450 Two other defects in said hotel property which existed and of which the plaintiffs had notice, and which they refused to repair, and which were inconsistent with the needs and demands of a good hotel, were that “the cellar steps were dangerous, being worn out and the timbers defective. The paper of the bath rooms and other rooms of the house was worn out, in bad condition and unfit for a good hotel, and they refused and neglected to replace the same. Wherefore the tenant of said premises was unable to maintain a good hotel at said property, and having truly and faithfully performed all the provisions of his contract, and the plaintiffs having failed to maintain theirs, he was justified in removing therefrom.”
This affidavit, made by one of the defendants, is supplemented by the affidavit of the tenant, in which he alleges that the facts contained in the supplemental affidavit of defense and also the original filed by John L. Zimmerman, one of the defendants, “ are true and he will be able to prove them on the trial of this case.”
The court, in its opinion, states the grounds upon which it deems the affidavit insufficient as follows: “While, as we have said, the plaintiffs agreed to maintain the hotel and other buildings in a state of repair consistent with the needs and demands of a good hotel, there is no stipulation that they shall take out the old and install a new heating plant, so that, during some of the winter months, the building should be more properly heated. Such a thing does not seem to have been in the contemplation of the parties, at the time they executed their lease. Apparently on November 14, 1906, two years after taking possession of the premises, and before the cold weather of that winter approached, Horner left. He was a tenant for the two preceding winters, but the affidavits do not state which years the troubles of which the defendants complain existed. So far as the cellar steps were worn out and the timbers defective, and the papers on the bath rooms and other rooms of the house worn out, in bad condition and unfit for a good hotel, these allegations are not sufficient, we think, to avail the defendants. Horner was to ‘repair all injury to the building or fixtures done or caused by the willful neglect or wanton and *451 malicious acts of any of his guests or employees.’ It is nowhere asserted that the alleged defects were outside of the responsibility thus imposed upon him. It is left open to conjecture that because they existed, therefore the plaintiffs were bound to repair. This does not follow as a consequence under the stipulation of the lease.”
Whether the renewal of the heating plant was in the contemplation of the parties at the time the lease was made is, in our opinion, a matter of little consequence. The landlords were bound to maintain the hotel and other buildings on the premises in a state of repair, consistent with the needs and demands of a good hotel. If, by reason of the unusual severity of the winter, it were demonstrated that the heating plant was insufficient, or if it became, by reason of use, unfitted for the purpose for which it had been originally installed, it was the duty of the landlords to repair or replace it. The fact is clearly set forth that “ The entire third floor of the building, which had eleven rooms, was so cold that it could not be occupied by guests, boarders would not stay and transient guests would not patronize the hotel.” If this was true and the cause of it was that stated in the affidavit of defense, we think it was sufficient, if the facts were shown, to constitute a defense.
The wearing out of the cellar steps and the defectiveness of the timbers could not, in the nature of the case, be fairly charged to the willful neglect or wanton and malicious acts of any of the tenant’s guests or employees. Even, however, if worn out and defective as alleged, we would not regard this allegation taken alone as sufficient to prevent judgment, inasmuch as the probable cost of making the repairs is not stated and the tenant undoubtedly had the right to make such, repairs and could have defalked the cost thereof from the rent. Taken in connection with the more serious allegation of the landlord’s failure to observe the covenants of the lease, it helps to establish a condition of which the defendants have a right to take advantage in establishing a defense.
The case is, in our opinion, clearly one for a jury, if the facts alleged shall be established.
Decree reversed and a procedendo awarded.
Rice, P. J., dissented.